IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSAN J. VALLEZ,

       Plaintiff,

v.                                                 CV 12-0618 WPL

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Susan J. Vallez filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments on January 30, 2009. (Administrative Record ("A.R.") at 128, 131.) She alleged that she had been disabled from December 8, 2008, due to diabetes and medical problems associated with her hands, neck, and back. (A.R. at 163.) Administrative Law Judge ("ALJ") Barry O'Melinn held a hearing on her applications on November 3, 2010. (A.R. at 14.) He determined that Vallez was not under a disability as defined by the Social Security Act and therefore not entitled to benefits. (A.R. at 24.) Both applications were denied. (*Id.*) Vallez requested review by the Appeals Council, but that request was denied, making the ALJ's decision the final decision of the Social Security Administration ("SSA"). (A.R. at 1-3.)

Vallez sought a review of the SSA's decision (Doc. 1) and filed a motion to reverse and remand for rehearing (Doc. 21). The Commissioner of the SSA ("Commissioner") responded (Doc. 22), and Vallez filed a reply (Doc. 23). Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge and

enter a final judgment. After having read and carefully considered the entire record and the relevant law, I grant Vallez's motion and remand this case to the SSA for proceedings consistent with this opinion.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is only a scintilla of evidence supporting it. *Hamlin*, 365 F.3d at 1214 (quotation omitted). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See id.* (quotation omitted). I may reverse and remand if the ALJ has failed "to apply the correct legal standards, or to show us that []he has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall*, 561 F.3d at 1051-52; 20 C.F.R. §§ 404.1520, 416.920 (2013). If a finding of disability or nondisability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most

that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### FACTUAL BACKGROUND

Vallez, age fifty-two, has worked intermittently as a medical assistant, a legal assistant, a 911 operator, and other positions over the last decade. (A.R. at 34-47.) Her last full-time employment before applying for DIB and SSI was as a medical assistant. (A.R. at 164.) Vallez's potential disability onset date was December 8, 2008. (A.R. at 14.) On her original applications for DIB and SSI, Vallez claimed that her ability to work was limited by her diabetes and by medical conditions associated with her hands, neck, and back. (A.R. at 163.)

Vallez was diagnosed with Type II diabetes in 1999. (A.R. at 406.) Although medical notes have periodically indicated that her diabetes is moderately well controlled (A.R. at 282), she reports that she often skips her insulin shots (A.R. at 406), and she says that she struggles to monitor and treat it while working (A.R. at 52-53, 435). Her physicians have worked with her to adjust her medication and insulin dosages (A.R. at 52, 239-44, 251, 407) and have encouraged her to avoid skipping her shots (A.R. at 407). Progress notes indicate that Vallez's control of her diabetes is suboptimal but improving. (*Id.*; *see also* A.R. at 52.)

Vallez has also suffered from bilateral carpal tunnel syndrome. (A.R. at 20.) She underwent carpal tunnel release and left finger and thumb release surgery in January 2009 (A.R.

at 310) and right finger and thumb release surgery in March 2009 (A.R. at 307). Her hands seemed to improve after the surgeries. (A.R. at 297, 303.)

Many of Vallez's medical records focus on the treatment of her back and neck problems and associated pain. In late 2008, she was diagnosed with degenerative disk disease and facet hypertrophy at the L4 and L5 levels. (A.R. at 276-77.) However, an MRI in that period showed no problems at L2-3, only mild diffuse disk bulge and grade 1 spondylolisthesis at L4-5, and no significant neural foraminal narrowing. (*Id.*) She was diagnosed with mild spinal stenosis, and doctors referred her to a pain clinic. (A.R. at 250, 276.) She underwent physical therapy in February 2010, at which time she was counseled on posture and appropriate exercise (A.R. at 358), but she cancelled her remaining physical therapy appointments without giving any reason for doing so (A.R. at 426). She complained of fluctuating levels of back and body pain throughout 2010, and she continued to receive pain treatment. (A.R. at 50, 430-32.)

Vallez also complained that pain in her knees made it difficult to exercise. (A.R. at 252.) X-rays in April 2009 revealed early bilateral degenerative arthritis. (A.R. at 297.) Although doctors recommended that she treat this condition with anti-inflammatories (*id.*), she reported worsening pain in her knees during her treatment for back pain (A.R. at 377).

The record also reveals medical conditions other than those complained of by Vallez in her DIB and SSI applications. First, while being treated for her back pain during this period, Vallez was assessed with obesity. (A.R. at 247, 250.) She reported continued weight gain and unsuccessful attempts to reduce her weight throughout 2009 and 2010. (A.R. at 238, 242, 400, 406.)

Additionally, Vallez reported ringing in her ears in April 2009. (A.R. at 241.) When David P. Green, M.D., a consultative physician, assessed Vallez's RFC in August 2009, he

concluded that Vallez had not established any hearing limitations and that Vallez needed to avoid concentrated exposure to heights. (A.R. at 332.) Throughout the next year, Vallez continued to complain of hearing loss (A.R. at 400, 431), and she sometimes complained of dizziness (*compare* A.R. at 431 (dizziness reported in April 2010), *with* A.R. at 400 (no dizziness reported in June 2010)). In August 2010, Dr. Melvin D. Brown with the University of New Mexico Hospitals conducted tests and concluded that Vallez suffered from tinnitus and vestibular weakness. (A.R. at 439.) Although Dr. Brown assessed Vallez as having sensorineural hearing loss, he observed that this condition was "subclinical," that Vallez had normal hearing within the majority of tone thresholds, and that Vallez possessed "100% speech discrimination bilaterally." (*Id.*)

Finally, Vallez has reported depression for many years, with much of her depression reportedly stemming from her inability to lose weight or to be active with her grandchildren. (A.R. at 48, 406.). Her depression reportedly fluctuated (*see, e.g.*, A.R. at 241, 400, 436), and an April 2010 review by a consultative psychiatrist determined that the condition was not severe (A.R. at 380).

Vallez's RFC was assessed twice by consultative physicians. Dr. Green's assessment occurred in August 2009. (A.R. at 328-35.) With respect to exertional limitations, Dr. Green determined that Vallez could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for six hours of an eight-hour workday, and sit for six hours of an eight-hour workday. (A.R. at 329.) With respect to postural limitations, Dr. Green found that Vallez could occasionally perform all listed tasks. (A.R. at 330.) No manipulative, visual, or communicative limitations were established, and only a few minor environmental limitations were recognized. (A.R. at 331-32.) In March 2010, upon Vallez's request for reconsideration, Mark A. Werner,

M.D., reviewed Dr. Green's RFC, added additional notes about more recent treatments, and affirmed the original RFC as written. (A.R. at 379.)

## HEARING TESTIMONY

On November 3, 2010, the ALJ held an in-person hearing at which Vallez testified. (A.R. at 14.) She reported that she had been working in a temporary position since September 20, 2010, that was scheduled to end on December 31, 2010 (*see* A.R. at 34-35), and she discussed her education, training, and work history at length (A.R. at 36-47). At one point, she mentioned that she had received unemployment benefits after leaving one job. (A.R. at 45.) Vallez reported continued difficulty walking, sitting, and carrying things (A.R. at 48, 51), and she testified that she suffered from problems with her hearing and equilibrium (A.R. at 54-56).

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ reviewed Vallez's claim pursuant to the five-step sequential evaluation process. (A.R. at 15-16.) He first determined that Vallez did not engage in substantial gainful activity between her onset date and September 20, 2010, and thus analyzed the material available to him to determine if she qualified for DIB and SSI benefits for that period. (A.R. at 16-17.) He then found that Vallez suffered from four severe impairments: bilateral carpal tunnel syndrome, bilateral degenerative arthritis of the knees, lumbar disc disease, and obesity. (A.R. at 17-18.) He also found that Vallez's depression was not a severe impairment. (*Id.*) Next, the ALJ concluded that Vallez did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations, expressly adopting the findings of fact made by Drs. Green and Werner as well as the consultative psychiatrist. (A.R. at 18.)

The ALJ proceeded to evaluate Vallez's RFC, primarily discussing the medical evidence as well as Vallez's testimony. (A.R. 19-22.) Along with the other medical records, the ALJ

expressly discussed Vallez's claims regarding hearing loss and tinnitus, noting that most of her tests showed no abnormalities and that Vallez only possessed hearing loss at extended high frequencies. (A.R. at 21-22.) The ALJ also stated that he had considered Vallez's obesity in assessing her RFC, although he did not explain whether or how this consideration impacted his findings. (A.R. at 22.) With respect to Vallez's claims regarding the extent and frequency of her reported limitations, he determined that such claims were "not fully credible," basing this determination on factors such as Vallez's work and training history, school attendance, and driving ability. (*Id.*) Based on his findings, the ALJ concluded that Vallez possessed an RFC "to perform a wide range of 'sedentary' work." (A.R. at 18.)

Relying on this RFC, the ALJ concluded that while Vallez could not perform any of her past relevant work, she was able to perform other jobs that exist in significant numbers in the national economy. (A.R. at 22-23.) On that basis, the ALJ determined that Vallez was not disabled under the meaning of the Social Security Act and not entitled to benefits. (A.R. at 23.)

Vallez appealed the decision (A.R. at 9-10) and submitted new evidence regarding her recent work history to the Appeals Council (A.R. at 6-7). The Council found that Vallez's reasons for disagreeing with the hearing outcome did not justify a review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. (A.R. at 1-3.)

### DISCUSSION

Vallez's raises multiple challenges to the ALJ's decision to deny benefits. First, she claims that the ALJ did not properly consider her claims of hearing loss and tinnitus at step two and beyond. (Doc. 21 at 6-7.) Second, she argues that the ALJ based his adverse credibility determination on impermissible factors. (*Id.* at 9-10.) Finally, she argues that the ALJ did not

appropriately assess the effect of her obesity on her RFC. (*Id.* at 7-9.) I have reorganized these claims and consider them based on the relevant steps of the sequential evaluation process.

### I.     Step Two

Vallez claims that the ALJ erred in failing to discuss her hearing loss and tinnitus when making his step-two determination that Vallez suffered from severe medically determinable impairments. (Doc. 21 at 6.) Generally speaking, step two is a threshold step that is simply meant to "weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (unpublished) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J. concurring)). At this step, all the ALJ is required to do is determine whether the claimant suffers from one or more severe impairments in order to ensure that review proceeds to the next step. *See Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (ending the analysis only "[i]f you do not have a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe"); *see also Dray*, 353 F. App'x at 149 ("[T]he failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."); 20 C.F.R. §§ 404.1523, 416.923 (noting that when determining the medical severity of multiple alleged impairments at step two, SSA considers the effects of the impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity").

In *Oldham*, an initial ALJ determination that the claimant did not suffer from any severe impairments was reversed by the Appeals Council, which remanded the case after stating that "[t]he evidence in the record indicates that the claimant's impairments are severe." 509 F.3d at 1255-56. On remand, the ALJ acknowledged that the claimant possessed severe impairments

without elaborating further, then proceeded to begin his new analysis at step four. *Id.* at 1256. The Tenth Circuit found no error in the ALJ's failure to establish that a particular impairment was severe, concluding that "all the ALJ was required to do" was to "ma[k]e an explicit finding that [the claimant] suffered from severe impairments." *Id.* Similarly, the ALJ here found that Vallez suffered from four severe impairments, then proceeded to step three without discussing whether her hearing loss or tinnitus were severe. (A.R. at 17.) That is all he was required to do at this step. *See Dray*, 353 F. App'x at 149 (citing *Oldham*, 509 F.3d at 1256).[1] Therefore, the ALJ did not err in failing to find Vallez's hearing loss and tinnitus to be severe impairments at step two.

## II.     Step Three

Vallez also contends that the ALJ failed to consider at step three whether her tinnitus and hearing loss met or were medically equivalent to a condition listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 21 at 7; Doc. 23 at 1.) In his decision, the ALJ stated that he had considered the opinions of consultative physicians who had reviewed Vallez's medical records. (A.R. at 18.) Such opinions include Dr. Green's conclusions that Vallez had no hearing limitations and needed to avoid concentrated exposure to heights (A.R. at 332) and Dr. Werner's discussion of Dr. Brown's assessments regarding hearing loss and tinnitus (A.R. at 379 (citing *id.* at 438-39)). The ALJ concluded that these opinions, which he was required to treat as expert opinion evidence, were well-reasoned and supported by the record. (A.R. at 18.) The ALJ also

---

[1] To be sure, the ALJ could have been more explicit with respect to the level of severity that he assigned to Vallez's hearing loss and tinnitus at this step. For example, the ALJ expressly found Vallez's depression to be a non-severe impairment at this step. (A.R. at 17-18.) However, in light of *Oldham*'s holding that step two is merely a threshold step, I must find that such a failure to discuss the severity of every alleged impairment does not constitute reversible error.

discussed Vallez's claims of hearing loss, dizziness, and instability at several points in his report. (A.R. at 20, 21-22.)

At step three, an ALJ is required to discuss the evidence behind his determination and his reasons for reaching this determination. 42 U.S.C. § 405(b)(1); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). A summary conclusion that a claimant's impairments do not meet or equal a listing-level impairment "is beyond meaningful judicial review" and must therefore be disregarded. *Clifton*, 79 F.3d at 1009. While the ALJ need not discuss every piece of evidence he relied on, the record must show that he considered all of the evidence. *Id.* (citations omitted). Still, a reviewing court must review the ALJ's decision "as a whole" in order to prevent "unwarranted remands [that would] needlessly prolong[] administrative proceedings." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005).

In *Clifton*, the Tenth Circuit found reversible error where the ALJ concluded in summary fashion, without discussing the medical record or identifying the relevant listings, that the claimant's impairments did not meet or equal a listing-level impairment. 79 F.3d at 1009. Similarly, the ALJ in *Miller ex rel. Thompson v. Barnhart* 205 F. App'x 677, 679 (10th Cir. 2006) (unpublished), also did not specifically identify the listing-level impairments he considered in reaching the same conclusion. However, in contrast to *Clifton*, the *Miller* ALJ's analysis as a whole contained a detailed discussion of the record, including consideration of the factors that the claimant felt that the ALJ had overlooked at step three. *Id.* at 680. Thus, in light of *Fischer-Ross*'s instruction to consider the record as a whole at step three, the Tenth Circuit concluded that the ALJ had thoroughly reviewed the record and had not committed reversible error. *Id.* (citing 431 F.3d at 730).

I find that the facts here are more analogous to those in *Miller* than to those in *Clifton*. In this case, the ALJ discussed Vallez's hearing loss and tinnitus at multiple points in his analysis (A.R. at 20, 21-22), sufficiently showing that he considered these factors in reaching his step-three conclusion. He made further reference to the medical evidence in adopting the consultative physicians' reviews of Vallez's medical records, including the RFC assessment by Dr. Green that found no communicative limitations and the RFC assessment by Dr. Werner that expressly considered Vallez's claims of hearing loss and tinnitus. (A.R. at 18.) Reviewing the ALJ's decision as a whole and the evidence upon which he relied, I conclude that his step-three determination was supported by substantial evidence. Thus, the ALJ did not err in failing to discuss Vallez's hearing loss and tinnitus at greater length.

### III.  Step Four

The ALJ's evaluation of a claimant's physical and mental RFC constitutes the first of three phases of the step-four analysis. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citing *Winfrey*, 92 F.3d at 1023). In determining a claimant's physical abilities, an ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b), 416.945(b).

The ALJ, after reviewing Vallez's medical history and testimony, concluded that Vallez had an RFC for sedentary work. (A.R. at 18.) Vallez alleges three errors at this stage of the ALJ's decision. First, she disputes the ALJ's findings regarding her credibility. (Doc. 21 at 9-10.) Second, she contends that the ALJ erred by failing to properly consider Vallez's hearing loss or tinnitus when developing the RFC. (*Id.* at 7; Doc. 23 at 1.) Finally, she argues that the ALJ

11

was not sufficiently specific when discussing Vallez's obesity during his RFC analysis. (Doc. 21 at 7-9.)

*A. Credibility*

Although the ALJ found that Vallez suffered from medically determinable impairments, he concluded that Vallez's statements regarding the "intensity, persistence and limiting effects" of her symptoms were not fully credible to the extent that they were inconsistent with his RFC findings. (A.R. at 19; *see also id.* at 22 (finding that Vallez's testimony regarding the "extent and frequency" of her limitations was "not fully credible").) Vallez contends that the ALJ reached this conclusion by relying on impermissible considerations regarding her current employment status, her school attendance, and her previous receipt of unemployment benefits. (Doc. 21 at 9.)

"[S]pecial deference is traditionally afforded a trier of fact who makes a credibility finding." *Williams*, 844 F.2d at 755. Such findings will not be disturbed if they are supported by substantial evidence and not overwhelmed by contradictory evidence. *See, e.g.*, *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal citations and quotations omitted). However, credibility findings should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citing *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

An ALJ may consider a claimant's work record in making determinations regarding her credibility and disabled status. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Harper v. Astrue*, 428 F. App'x 823, 829 (10th Cir. 2011) (unpublished) (accepting the ALJ's consideration of a claimant's "active participation in part-time work" in assessing credibility). Vallez speculates that had she continued working past her contract end date at Stream Global Services with the same attendance record, she would have been terminated, meaning that her time at the

12

company would have constituted an unsuccessful work attempt. (Doc. 21 at 10 (citing 20 C.F.R. §§ 404.1574, 416.974).) On that basis, Vallez contends, her time at the company should not be used as evidence that she is not disabled. (*Id.* (citing *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357-58 (10th Cir. 1987)).) However, her speculation appears to be no more than that; Vallez concedes that her temporary employment at Stream Global Services ended because she reached her contract end date, not because her disability prevented her from working. (Doc. 23 at 3.) Accordingly, I find that Vallez's work record does not reflect a relevant unsuccessful work attempt, and the ALJ's use of this work record in assessing her credibility was permissible. *Accord Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir. 2003).[2]

In the alternative, Vallez argues that her temporary work at Stream Global Services "at best . . . may have been the beginning of a trial work period." (Doc. 21 at 10 (citing 20 C.F.R. § 404.1592).) However, SSA regulations state that a claimant must already have been found to be disabled in order to be eligible for a "trial work period." 20 C.F.R. § 404.1592(d). Since Vallez has not been determined to be disabled, her work at the company could not have been a trial work period.

Vallez also argues that the ALJ should not have considered her school attendance when assessing her credibility. (Doc. 21 at 9.) This argument is erroneous, as the Tenth Circuit plainly permits an ALJ to consider school attendance in determining a claimant's right to disability payments. *See, e.g.*, *Gay v. Sullivan*, 986 F.2d 1336, 1339 (10th Cir. 1993) (citing *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979)).

---

[2] The Commissioner erroneously cites *Depover* as binding caselaw in the Tenth Circuit. (Doc. 22 at 12 ("In *Depover*, the Tenth Circuit explained that a job that ends, not because of claimant's disability, cannot be an unsuccessful work attempt.").) Although I find *Depover* to be persuasive, it is not a Tenth Circuit case, and it does not have any binding authority in this circuit. The Commissioner should take care to avoid such sloppy citation errors.

Finally, Vallez claims that the ALJ impermissibly based his credibility determination on her collection of unemployment benefits in 2010. (Doc. 21 at 10.) As she points out, an adverse credibility finding based on a claimant's receipt of unemployment benefits is erroneous. *Roberts v. Callahan*, 971 F. Supp. 498, 501-02 (D.N.M. 1997); *see also Alverio v. Chater*, 902 F. Supp. 909, 928 (N.D. Iowa 1995) (receipt of unemployment benefits by a claimant does not necessarily indicate a lack of credibility); *Riley v. Heckler*, 585 F. Supp. 278, 285 (S.D. Ohio 1984) (same). However, in contrast to his mention of Vallez's work record and school attendance (A.R. at 22), the ALJ did not expressly base his credibility determination on Vallez's collection of unemployment benefits. Rather, he mentioned these benefits in the context of recounting Vallez's hearing testimony regarding her work history. (A.R. at 20; *see also id.* at 45 (Vallez's testimony).) The ALJ's decision to accurately describe Vallez's testimony, without more, does not indicate that this brief portion of the testimony played a part in the ALJ's credibility determination. Accordingly, I find no error here.

The ALJ's credibility determination meets the applicable legal standards, is supported by substantial evidence and is not based on impermissible factors. Therefore, the ALJ's credibility findings are entitled to deference and must be affirmed.

### B.  Hearing Loss and Tinnitus

Vallez argues that there is no indication that the ALJ appropriately considered her hearing loss or tinnitus when developing the RFC. (Doc. 23 at 1.) This assertion is not borne out by the ALJ's decision. The ALJ observed in his findings that Vallez testified that she suffered from "dizziness, instability, and ringing in her ears." (A.R. at 20.) However, the ALJ also noted that Vallez's relevant medical tests showed "results [that] were essentially normal," stable hearing except at high frequencies, and no abnormalities in her internal auditory canals. (A.R. at

21-22.) These findings are supported by substantial evidence in the record, including RFC assessments by consultative physicians (A.R. at 332, 379) and recent test results by Vallez's treating physicians (*see, e.g.*, A.R. at 438-39). Thus, Vallez's contention that the ALJ failed to sufficiently consider her hearing loss or tinnitus at this stage is incorrect.

    *C.  Obesity*

In his RFC determination, the ALJ acknowledged Vallez's obesity and stated that he had "considered the effects of [her] obesity by itself and in combination with other impairments." (A.R. at 22.) He also stated that he had "given due consideration to [her] obesity in assessing [her] residual functional capacity and, in this case, limiting [her] to the performance of 'sedentary work.'" (*Id.*) Vallez argues that this statement is insufficient "[b]oilerplate language" and that the ALJ is required to more clearly indicate how her obesity influenced his RFC assessment. (Doc. 21 at 7-9.)

Vallez cites two Social Security Rulings ("SSRs") that are relevant to an ALJ's RFC assessment when a claimant alleges obesity. SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See* 20 C.F.R. § 402.35; *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

SSR 96-8p requires the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." 1996 WL 374184, at *7 (July 2, 1996). SSR 02-1p, in turn, requires that an assessment be made "of the effect

15

obesity has upon the [claimant]'s ability to perform routine movement and necessary physical activity within the work environment. . . . As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2000 WL 628049, at *6-7 (Sept. 12, 2002). An ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments"; instead, the ALJ must "evaluate each case based on the information in the case record." *Id.* at *6.

An unpublished Tenth Circuit case cited by Vallez, *DeWitt v. Astrue*, 381 F. App'x 782 (10th Cir. 2010), is on point. There, as here, the ALJ acknowledged the claimant's obesity as a severe impairment at the second step of the sequential evaluation process. *See id.* at 786. Further, as in the instant case, the ALJ in *DeWitt* limited the claimant to sedentary work with other restrictions. *See id.* at 785. However,

> there [was] nothing in the [ALJ's] decision indicating how or whether [the claimant's] obesity influenced the ALJ in setting those restrictions. Rather, it appear[ed] that the ALJ's RFC assessment was based on "assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments"—a process forbidden by SSR 02-1p.

*Id.* (citing SSR 02-1p, 2000 WL 628049, at *6). Because of the ALJ's failure to adequately consider the claimant's obesity in relation to her other impairments and her RFC, the Tenth Circuit remanded the case. *Id.* at 786.

Here, the medical and nonmedical evidence cited by the ALJ provides significant evidence that supports the RFC assessment that Vallez should be restricted to sedentary work. In addition to Vallez's testimony, the ALJ relied on medical evidence regarding Vallez's carpal tunnel syndrome; diabetes and high blood pressure; spine, back, and knee conditions; overall pain; and audiological problems. (A.R. at 20-22.) However, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p,

16

2000 WL 628049, at *6. Here, although the ALJ stated that he had "given due consideration" to Vallez's obesity in assessing her RFC (A.R. at 22), he did not explain what impact her obesity had on this assessment, or indeed whether it had any impact on her RFC at all. While the Commissioner proposes a number of reasons why Vallez's obesity may not have affected her RFC or her ability to work (Doc. 22 at 8-9), my review of the ALJ's decision must be based on the reasons stated therein, not on post hoc rationalizations. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) ("Affirming [a] post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.")). Accordingly, I cannot conclude that the ALJ's decision was supported by substantial evidence, and this case must be remanded to ensure compliance with SSR 02-1p.

## CONCLUSION

The ALJ erred in his review of Vallez's applications for DIB and SSI payments. Although he reached a suitable credibility determination and appropriately considered her claims of hearing loss and tinnitus, he failed to properly indicate how or whether Vallez's obesity influenced his RFC findings. Accordingly, I grant Vallez's motion to reverse, and I remand this case back to the SSA for proceedings consistent with this opinion.

IT IS SO ORDERED.

*William P. Lynch*
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.